Byrne v Finch (2025 NY Slip Op 03463)

Byrne v Finch

2025 NY Slip Op 03463

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: BANNISTER, J.P., MONTOUR, SMITH, AND HANNAH, JJ.

410 CA 24-00180

[*1]JOHN BYRNE AND DEBRA BYRNE, PLAINTIFFS-RESPONDENTS,
v
DANA FINCH, D.O., AND OSWEGO HOSPITAL, DEFENDANTS-APPELLANTS. 

CONNORS LLP, BUFFALO (BRYAN P. KROETSCH OF COUNSEL), FOR DEFENDANT-APPELLANT DANA FINCH, D.O.
MARTIN, GANOTIS, BROWN, MOULD & CURRIE, P.C., DEWITT (GABRIELLE L. BULL OF COUNSEL), FOR DEFENDANT-APPELLANT OSWEGO HOSPITAL.
D.J. & J.A. CIRANDO, PLLC, SYRACUSE (REBECCA L. KONST OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS. 

 Appeals from an order of the Supreme Court, Oswego County (Gregory R. Gilbert, J.), entered January 2, 2024. The order, among other things, denied in part defendants' motions for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiffs commenced this medical malpractice action against defendants, Oswego Hospital (Hospital) and Dana Finch, D.O., seeking damages for injuries allegedly sustained by John Byrne (plaintiff) after he presented to the Hospital's emergency department with complaints of severe chest pain. Plaintiff was attended to by Finch, the physician in charge of the Hospital's emergency room at that time. Plaintiff was eventually transferred to another hospital that was equipped with a catheterization lab used for treating patients having a heart attack. He survived but sustained permanent damage to his heart. Plaintiffs allege, inter alia, that defendants failed to timely diagnose plaintiff's condition and failed to timely transfer him. Defendants separately moved for summary judgment dismissing the complaint. Supreme Court granted the motions with respect to plaintiffs' claims of negligent supervision and training and otherwise denied the motions. Defendants separately appeal from the order to the extent that it denied their respective motions. We affirm.
In moving for summary judgment in a medical malpractice action, a defendant has "the initial burden of establishing either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiff's injuries" (Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017] [internal quotation marks omitted]). We conclude that defendants met their initial burden on their respective motions with respect to both issues and, thus, "the burden shifted to plaintiffs to raise triable issues of fact by submitting an expert's affidavit both attesting to a departure from the accepted standard of care and that defendants' departure from that standard of care was a proximate cause of the injur[ies]" (Isensee v Upstate Orthopedics, LLP, 174 AD3d 1520, 1522 [4th Dept 2019]; see Bubar v Brodman, 177 AD3d 1358, 1359 [4th Dept 2019]).
Contrary to defendants' contentions, we conclude that plaintiffs raised triable issues of fact sufficient to defeat the motions by submitting, inter alia, an expert affidavit from an emergency room physician establishing that Finch "deviated from the applicable standard of care and that such deviation was a proximate cause of [plaintiff's injury]" (Heinrich v Serens, 217 AD3d 1320, 1322 [4th Dept 2023] [internal quotation marks omitted]; see Leberman v Glick, 207 AD3d 1203, 1205 [4th Dept 2022]). Plaintiffs' expert explained that, given plaintiff's [*2]symptoms at the time he presented to the emergency department, there was a high probability that he was suffering from myocardial infarction, also known as a heart attack. Plaintiffs' expert opined that, inter alia, Finch breached the standard of care in failing to recognize the significance of those symptoms which, in turn, delayed transfer to the other hospital and "diminished [plaintiff's] chance of a better outcome" (Clune v Moore, 142 AD3d 1330, 1331 [4th Dept 2016] [internal quotation marks omitted]; see Leberman, 207 AD3d at 1206; Jeannette S. v Williot, 179 AD3d 1479, 1481 [4th Dept 2020]).
Defendants specifically contend that the court erred inasmuch as plaintiffs failed to raise a triable issue of fact on negligence because their expert introduced a new theory of liability that Finch should have ordered serial EKGs. We reject that contention because, even assuming, arguendo, that the court relied on plaintiffs' expert's opinion with respect to serial EKGs, such opinion did not assert a new theory of liability for negligence (see generally Flynn v Haddad, 109 AD3d 1209, 1210 [4th Dept 2013]). In the complaint, plaintiffs alleged that defendants were negligent in "failing to more timely order medical and/or diagnostic tests," which was sufficient to encompass the expert's opinion identifying the specific tests that were required to meet the standard of care. We conclude that the conflicting expert opinions submitted by plaintiffs and defendants "presented a 'classic battle of the experts' precluding summary judgment" (Jeannette S., 179 AD3d at 1481; see Leberman, 207 AD3d at 1206).
We have considered defendants' remaining contentions and conclude that they lack merit.
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court